No. 17,074.

PEOPLE *v.* URSO.
(269 P. [2d] 709)

Decided April 12, 1954. Rehearing denied May 10, 1954.

Mr. DUKE W. DUNBAR, Attorney General, Mr. BERT M. KEATING, Mr. MAX D. MELVILLE, for the People.

Messrs. DICKERSON, MORRISSEY, ZARLENGO & DWYRE, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

ON the 21st day of February 1952, Phillip Urso, H. M. Davidson and Marvin Roy Pratt were charged jointly with aggravated robbery in a criminal information filed in the district court in the City and County of Denver. The record shows that on February 27, 1952, Urso, on arraignment, entered a plea of not guilty. We assume that there was a severance, because trial was had on February 27, 1953 as to Urso alone; and we further assume that Urso, in the meantime, was at liberty under bond, as were the other two codefendants as shown by the record.

At the trial Davidson, in the words of the trial court,

"had turned state's evidence," and in the words of the Attorney General in his brief before us, "the sole witness implicating Urso was Davidson." In the belief that Davidson's testimony was so contradictory and inconsistent as to be wholly unworthy of belief by anyone, the trial court at the close of the People's case, granted a motion for directed verdict. The Attorney General, as is provided, prosecutes this writ of error for determination of a question of law, and the sole problem involved is: Did the trial court, under the facts in this case, invade the province of the jury? The Attorney General presents this question quite succinctly in the following words: "May a judge direct an acquittal as a matter of law because he does not believe the testimony of an essential witness manifestly sufficient to convict if believed, although there has been no contradiction or inconsistency within that testimony, but merely impeachment of the witness by out of court contradictions?"

To fully evaluate this situation before us, it is not necessary to minutely detail all of the testimony in the case, it being sufficient only to point up the highlights thereof. At this point it is well to remember that at the trial there was no testimony of any kind which would implicate defendant Urso, other than the testimony of Davidson, an ex-convict. In passing, we might say the briefs reveal that the other accomplice, Pratt, while out on bond and in California, met head on with the authorities in another crime and was killed prior to the date of this trial.

Davidson and Pratt, with force, robbed Elderman on the night in question. Elderman had known Urso, defendant in error here, for seven or eight years prior to the time of the trial; had talked to him on many prior occasions; and had been to his place of business. Elderman also had known Davidson for a number of years. Davidson had been convicted of assault to murder and served a penitentiary sentence therefor; later he was convicted of robbery, and he served fifty-nine months

of a seven to ten-year sentence. Elderman had constantly worn a large diamond ring for twelve or fourteen years. At about 11:00 o'clock on the night of February 14, 1952, Elderman received a telephone call at his apartment advising him that his place of business was on fire and he had better get there as quickly as possible. Elderman testified that he did not recognize the voice on the telephone. His car was parked on the street in front of the apartment and he immediately made for the car and when he reached it, Pratt held a gun on him and said, "This is a stickup. Get in there. Give me the keys." Elderman got in the car and Pratt followed him and sat behind the wheel. Davidson, also armed with a gun, entered the front of the car from the other side. In searching Elderman they discovered that he was not wearing the diamond ring, but they took his wallet, containing about $179.00 in cash, and then compelled Elderman to return with them to his apartment where they then obtained the ring. Shortly thereafter Pratt and Davidson were apprehended and after seven days of frequent questioning by the police, Davidson signed a statement implicating defendant Urso as the mastermind in the crime. Later, Davidson and Pratt were released on bond, but before trial, Pratt was killed while attempting a bank robbery in California. Attorney Fred Pferdesteller was Pratt's attorney. On March 5, 1952, Davidson and one Route visited the attorney's office and Davidson and Mr. Pferdesteller were not known to each other. Davidson said he wanted to make an affidavit and those present were Davidson, Pferdesteller, Vondy, his law partner, and a stenographer. Davidson made a statement, which was reduced to writing, signed by him, and notarized. The testimony shows that Davidson read the statement and said that everything contained therein was true and initialed each page thereof. This statement completely exonerated defendant Urso, and the statement shows, "the only reason that I signed the statement in which Phillip Urso was named as the third party in

this alleged crime was because of repeated questioning and threats of the police department unless I implicated Urso, and I was forced under pressure to sign the statement against Urso * * *." He further stated therein that Flor, a police officer had stated that they knew Urso had been doing things for years, they thought, and they had been trying to get something on him for that time; that he was questioned on an average of three to four hours a day and threatened with life imprisonment unless he implicated a third party in the robbery; and that, during all the questioning by the police department, admitted making the telephone call to Elderman himself.

At the conclusion of the People's case, the district attorney admitted that the only evidence they had to connect defendant with the crime charged was the testimony of Davidson, and the Attorney General now says, "The sole witness implicating Urso was Davidson." While on the stand as the People's witness, the effect of Davidson's testimony was the same as that given to the police authorities. His testimony given as a witness conflicted, in other less material things, with the testimony of nearly all of the other witnesses appearing for the People, and in the cross-examination he was somewhat evasive. In the cross-examination he was confronted with examination as to the affidavit made, and after identifying the document and admitting his signature, he attempted to repudiate the contents thereof, and sought to charge the attorney with having worded the statement to suit his own convenience. It is well to note here and now, the People failed to call as witnesses any of the other persons who were present when the affidavit was made and whose names we have hereinabove set out.

The Attorney General contends that Davidson's testimony from the witness stand in the trial was sufficient within itself and not contradictory, therefore it should have been considered by the trial court in the light most favorable to the People and taken as true, and strong inferences reasonably deducible from the evid-

ence should be indulged; and further, that when this testimony is isolated and viewed separately from the rest of the evidence, it was sufficient to convict and therefore should have been submitted to the jury. In other words, counsel for the People contend that on a motion for directed verdict, the court may not consider the whole case on which the People rest, but must lay aside other facts and features that would weaken or destroy the testimony given and consider only those parts of the testimony that give support to the prosecution's side of the case. In this case it is not, as the Attorney General contends, a case where the judge should not direct a verdict because he, personally, did not believe that the only witness to the material fact was not telling the truth. The witness, his background, his record, and all other things completed a picture in the trial court's consideration that justifiably induced the conclusion reached — that the testimony was not worthy of belief. In a civil action, where a less strict rule should prevail, this Court recently said that on the question of directing a verdict, the trial court or this Court, is to determine finally whether the testimony is sufficiently material and substantial. *Gossard v. Watson,* 122 Colo. 271, 221 P. (2d) 353. We repeatedly have held that the testimony coming from such a witness as here involved, must be received with great caution. *Schechtel v. People,* 105 Colo. 513, 99 P. (2d) 968. This witness not only was an admitted participant in the crime, but also was an admitted convict. In viewing this testimony with the caution required, one thing was easy to determine, and that was, that the witness was a liar. When he lied or where he lied, would be a hazardous guess, and verdicts in criminal cases should not be based on guessing, speculation or conjecture. *Polz v. Donnelly,* 121 Colo. 95, 213 P. (2d) 385, approving *Franklin v. Skelly Oil Co.,* 141 F. (2d) 568. The decisions of this Court, and elsewhere, support the proposition that where there is some evidence favoring the prosecution, a verdict should not

be directed, but the important thread running through all the decisions is that it must be *competent* evidence.

 We now are asked to set the line of demarcation between granting a motion for directed verdict and setting aside a verdict. The contention is made that in applying the general rule that where a verdict is set aside it is not a finality, but the directing of a verdict is. This may have a peculiar application to civil cases; however, the contention is not wholly sound, because it is within the province of the trial court to set aside a verdict and dismiss the complaint or the action. In our opinion, we are called upon to make a distinction without a clearly defined difference. It is our opinion, and we so state, that if it is within the power of a trial court to set aside a verdict, not supported by competent legal evidence, then it is equally within the province and power of the court to prevent such a verdict ever coming into existence. In either position, before or after the verdict, the trial court is compelled to survey and analyze the evidence, and from the same evidence, his analysis would undoubtedly be the same before or after a verdict. If it is to the end that the evidence is insufficient or incompetent, and no part of it is convincing beyond a reasonable doubt, then he should be courageous enough to prevent a miscarriage of justice by a jury. When we have before us the finding of a competent trial judge who had the opportunity to observe the witness, his demeanor, and consider the possible or likely quality of his testimony on account of his past criminal record, and the fact that he was a participant in the crime, and consider all of the evidence in the entire case and arrive at an honest conclusion that the testimony of the only witness that would implicate defendant was unworthy of belief, then he certainly had the right to say, and it was his duty to say, that it was unbelievable and, in law, was not competent to support a verdict of guilt, then we must uphold the end of such courageous action by affirming his judg-

ment; accordingly, the judgment in the instant case is affirmed.