## No. 24894

## The People of the State of Colorado v.
## Ned Naranjo a/k/a Ned Robert Naranjo a/k/a Ned R. Naranjo
(509 P.2d 1235)

Decided April 23, 1973.

274

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Tennyson W. Grebenar, Assistant, for plaintiff-appellee.

Seavy, Abbot & Jensen, V. G. Seavy, for defendant-appellant.

MR. CHIEF JUSTICE PRINGLE delivered the opinion of the Court.

Defendant, Ned R. Naranjo, appeals from his conviction for second-degree murder. He contends that reversal of the judgment of the trial court is required because, in his view: (1) the evidence in this case was insufficient as a matter of law to support the jury's verdict, and therefore, the trail judge erred in not granting defendant's motion for judgment of acquittal; (2) the admission of defendant's statement, being a product of several interrogations of defendant, was a violation of constitutional requirements mandated by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; and (3) the submission of Instruction 22, relating to the evidentiary value of statements or admissions made by defendant, was erroneous. We do not agree, and therefore affirm the judgment of the trial court.

I.

Defendant contends that the circumstantial evidence adduced at the trial was insufficient to permit the question of defendant's guilt to go to the jury and that the trial court should therefore have granted his motion for judgment of acquittal. The evidence in this case is entirely circumstantial. It appears from the record that several witnesses testified to defendant's presence and demeanor in the El Fandango Bar in Pueblo, Colorado on the evening of June 21, 1969, which was the date of the killing alleged in the information.

The deceased was the proprietor of the bar. As a result of the defendant's conduct in the bar, the deceased's son, Aurelio Sisneros, asked the defendant to leave the bar. The testimony disclosed that the defendant left the interior of the bar and went to the front porch. Witnesses testified that thereupon the deceased Sisneros went to the porch and was talking to the defendant. Witnesses saw no one else in the area of the porch at the time the discussion between defendant and the deceased took place. Shortly thereafter, Aurelio heard a scuffling on the front porch. He opened the door to the porch and saw the defendant making "motions" at his father who was slumped against the door. Aurelio could not say whether the defendant had a weapon when he was striking at his father. The deceased staggered inside and

said to his son, "Don't go out there, he's got a knife." At this point, the defendant fled. Aurelio rushed his father to the hospital where the father died of stab wounds. Police officers came to the bar to investigate the incident and found a knife on the front porch of the bar. The knife was never identified as belonging to the defendant.

Shortly thereafter, on the basis of the identification by Aurelio, the defendant was arrested at a drive-in restaurant in the vicinity. When arrested he was wearing a shirt which was spotted with blood. This shirt was identified by witnesses at the trial as looking like the one worn by the defendant while at the El Fandango Bar.

Where the guilt of the defendant is proven by circumstantial evidence, as in this case, the test for denial of a motion for judgment of acquittal has been set out with clarity in previous decisions of this Court. In *Mathis v. People,* 167 Colo. 504, 511, 448 P.2d 633, 637, we stated:

"Where there is evidence in the record from which a jury can find beyond a reasonable doubt that the circumstances are such as to exclude every reasonable hypothesis of innocence, we cannot say the trial court erred in refusing to enter a judgment of acquittal, nor will we sit as a thirteenth juror and set aside a jury verdict because we might have drawn a different conclusion from the same evidence."

While examining the facts in a particular case, this Court must assume that the jury adopted that evidence, or any reasonable inferences therefrom, which supports the verdict. *Wilson v. People,* 143 Colo. 544, 354 P.2d 588. An examination of the evidence in this case, which we have outlined, establishes at least a prima facie case impregnable against a motion for acquittal. *Ruark v. People,* 164 Colo. 257, 434 P.2d 124. Short of a full eyewitness account of the killing, the testimony of Aurelio Sisneros, which we presume was believed by the jury, inferentially could serve to exclude any other reasonable hypotheses for the killing. The son saw defendant making "motions" at his father, and the elder Sisneros, after the confrontation, stated, "He's got a knife." That Sisneros' death was the result of stab wounds is not in

dispute. The evidence, viewed in a light most favorable to the People, *Bennett v. People,* 155 Colo. 101, 392 P.2d 657, was clearly sufficient to go to the jury for the ultimate determination of defendant's guilt or innocence.

II.

Defendant's next contention goes to the method of the police interrogation of the defendant and the admission of a statement given as a result of this interrogation. When taken into custody defendant was given his *Miranda* warnings and asked if he had anything to say. Defendant stated that he did not wish to talk, at which time interrogation was terminated. Approximately four hours later, after the police had found the knife on the porch of the bar, defendant was again brought to the interrogation room. After the *Miranda* advisements were received and defendant stated he did not wish a lawyer, he was asked whether he wished to make a statement regarding the knife. He indicated that he had never seen the knife before and the interrogation was terminated. Approximately six hours later, at about noon of the day following the killing, defendant was again given his Miranda warnings and asked if he wished to make a statement. He indicated that he did and subsequently dictated a two-page statement of his version of the incident which he signed. In this statement he admitted arguing with the deceased on the front porch of the bar and then stated, "I do not remember if I cut the man. I don't believe I did because I didn't have a knife." An *in camera* hearing was held to determine the voluntariness of the signed statement and the court thereupon ordered the same admitted into evidence.

Defendant would have us interpret *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, to mean that after an accused has once refused to talk to law enforcement officers, the police are forever barred from questioning or talking to the defendant about any phase of the criminal conduct that was charged. As we have previously stated, we do not interpret *Miranda* to imply such an arbitrary limitation. *See Sergent v. People,* 177 Colo. 354, 497 P.2d 983; *Dyett v. People,* 177 Colo. 370, 494 P.2d 94;

*Gass v. People,* 177 Colo. 232, 493 P.2d 654. What the Supreme Court condemned in Miranda were those cases in which the police refuse to take "no" for an answer and continue to question, harass and coerce the defendant to cast aside his desire to exercise his constitutional right to remain silent. Such is not the situation in this case. As the testimony from the *in camera* hearing reflects, the first two interrogation sessions, separated by four hours, were terminated as soon as defendant indicated he did not wish to say anything further. The record reflects that at the third interrogation, held six hours later, defendant stated he desired to make a statement, and voluntarily waived his right to remain silent. The record does not reveal, nor does defendant contend, that he was harassed or coerced in any manner in making such a waiver. The admission of defendant's signed statement was not error.

### III.

Defendant next contends that it was error for the trial court to submit Instruction 22 to the jury, which advised the jury of the effect of "statements" or "admissions" made by the defendant. The defendant argues that no such "statement" or "admission" was ever made by him; therefore, the admission of such an instruction was erroneous. He contends that since defendant's statement did not directly admit the killing no instruction with respect to it should have been given. We do not agree.

An instruction dealing with the effect of a defendant's statement does not require for its submission that the defendant's statement reached the level of a confession or a direct admission of a crime. The statement referred to here is clearly a declaration of matters of fact and thus is a "statement," *Black's Law Dictionary* (4th Ed. 1957, for purposes of this instruction. Together with other facts in evidence, it could well raise inference of guilt. It was therefore not error to give the instruction under the circumstances and the evidence present in this case.

The judgment is affirmed.