No. 25722

**The People of the State of Colorado v. Oscar Lorenzo O'Donnell**
(521 P.2d 771)

Decided April 15, 1974. Rehearing denied May 13, 1974.

John P. Moore, Attorney General, John E. Bush, Deputy, David A. Sorenson, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Mary G. Allen, Deputy, for defendant-appellant.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

Appellant was convicted of malicious mischief in violation of C.R.S. 1963, 40-18-1. We affirm the judgment of conviction.

The charge against appellant arose out of a landlord-tenant dispute. Extensive damage to the landlord's property was discovered after appellant and his family had vacated the premises pursuant to a notice of eviction. Clorox, catsup and furniture polish had been poured, spread over and splattered on the drapes, furniture and carpeting of the apartment, inflicting damages estimated at approximately seven hundred dollars.

A review of the record convinces us that the People's case, although wholly circumstantial, when viewed in the light most favorable to the prosecution, was sufficient to sustain the verdict of guilty. The evidence as established by the People proved that the tenancy was ill-advised and undesirable for both the landlord and the tenant. Darrel Roybal and his wife, on July 4, 1971, rented their one-bedroom furnished basement apartment to appellant, his wife and four children. Appellant paid a full month's rent of $125 in advance, plus a damage deposit of $35. Contrary to the understanding that the apartment was to be occupied by only appellant's immediate family, his married daughter, son-in-law, and their child, also moved into the apartment, making nine occupants for the one-bedroom apartment. Heating problems developed, inasmuch as the thermostat control for the whole house was in the basement apartment. The children were noisy and destructive. A screen door was broken loose. The vacuum cleaner was broken. The handrail on the stairway leading to the apartment was pulled off the

wall. Fruit trees were damaged. The apartment became filthy and litter accumulated in the yard. Discussion concerning these problems with the tenants resulted in heated arguments.

At the end of the month, Roybal gave appellant verbal notice to vacate and offered to return the damage deposit, less $14 to be applied to repair of the damaged property. This was not acceptable and further discussions concerning return of the damage deposit were unsuccessful. Being unable to resolve the matter amicably, Roybal employed the services of the sheriff to serve an eviction notice. This was accomplished on August 5. The notice proved ineffective. Although appellant's family had partially moved out, they still retained possession of the apartment on August 6, determined to "use up" the $35 damage deposit.

Roybal then concocted a scheme to pressure appellant to move out of the premises. He arranged to have his boss, Jim Hoepker, and three co-employees appear at the apartment posing as new tenants who were moving in. This they did, arriving at approximately 5:30 p.m. that evening. They encountered appellant's wife, Mrs. O'Donnell, and her daughter, who were adamant in their determination to remain in the premises. They refused to accept a full refund of the damage deposit from Hoepker. A noisy argument developed. Mrs. O'Donnell called the sheriff. He appeared and discussed the eviction problem with Mrs. O'Donnell, advising he could do nothing about the eviction notice.

The record is clear that both Hoepker and the sheriff were in the apartment at that time; they did not observe any of the damages which precipitated the filing of the malicious mischief charges.

Shortly after the sheriff departed, appellant, his married daughter and his son-in-law arrived at the premises. Hoepker tried to convince appellant to vacate and again offered return of the full damage deposit. Appellant refused. An angry argument ensued. A neighbor called the sheriff, who arrived and placed appellant under arrest. While en route to the jail house, he prevailed on the sheriff to allow him to return to

and vacate the premises, rather than imprison him, promising to be completely moved out within one and one-half hours. The sheriff acceded to this request and returned him to the premises and released him at approximately 6:30 p.m. The sheriff then advised Roybal of appellant's promise to move out.

No one saw appellant enter the apartment when he was returned and released by the sheriff.

Approximately one hour later, after appellant and his family had vacated, the Roybals, Hoepker and a neighbor went down to inspect the apartment. They then discovered the bleach, catsup and furniture polish damage. The bleach was still dripping from the drapes and a wet Clorox bottle was found in the backyard.

On August 10, a search of appellant's new residence revealed the stairway railing, which he admitted taking from the apartment, claiming to be entitled to it since the damage deposit had never been returned to him. In a statement to an investigating officer, appellant denied personally damaging the apartment, contending that his wife, four-year-old daughter, and "four gentlemen" (presumably Hoepker and his three co-employees) had committed the damage.

Appellant testified, explaining that he did not inflict the damage inasmuch as the sheriff had directed him at the time of his release and return to the apartment to remain outside and not re-enter the apartment, on threat of rearrest; and that he did remain outside the apartment in his car while the others of his family removed the remainder of their belongings and loaded the car. Appellant also testified he did not aid, assist or encourage his wife or other members of his family to destroy Roybal's property. Appellant's version was corroborated by his married daughter, who claimed that the depredation was caused by Mrs. O'Donnell and one of the younger daughters.

I.

 The first assignment of error relates to the sufficiency of the evidence. On appeal we must assume that the jury adopted the evidence, and drew reasonable inferences

therefrom which supported its verdict. *People v. Naranjo,* 181 Colo. 273, 509 P.2d 1235. It is obvious the jury disbelieved and disregarded the testimony of appellant and his corroborating witness. This was the prerogative of the jury as the credibility of the witnesses and the weight to be accorded their testimony is properly for the jury. It is not our function on review to set aside the jury's determination and substitute our judgment therefor. That the jury chose to disbelieve the appellant is not surprising in view of the obvious weakness of the testimony as brought out on cross-examination and as shown by its inconsistencies, exaggerations and unreasonable assertions.

■ Thus, setting aside as incredible the testimony supporting appellant's defense, the jury was left to consider only the People's evidence. We cannot say that this evidence did not justify the jury in reasonably inferring that appellant did in fact enter into the apartment when released by the sheriff and, either as a principal or as an accessory, participate in the malicious depredation of the Roybal apartment. It is evident from the whole record that appellant had the opportunity to commit the offense and motive to do so by reason of the angry damage-deposit controversy; and it is also clear that the acts were done maliciously as is demonstrated by their destructive character. In view of these circumstances, we cannot say that the jury was not justified in concluding that appellant was guilty as charged.

## II.

■ Appellant's other contention of error relates to the claimed failure of the court to instruct the jury on the element of malice. Appellant's counsel did not object to the court's instructions, nor tender any instruction on malice. This alleged error was not raised in his motion for new trial.

We do not find prejudicial error in this regard. The court did instruct the jury on the required elements of the offense of malicious mischief, including the element of malice. The instruction required that the People prove beyond a reasonable doubt that the appellant "then and there acted with malice, in a spirit of hostility and revenge" when appellant

committed the destructive acts. Although it would have been appropriate to have given a further definition of malice had one been requested, the court complied with its fundamental duty of instructing the jury on each and every element of the offense with which the accused stood charged. *Cf. People v. Woods,* 179 Colo. 441, 501 P.2d 117.

The judgment is affirmed.

MR. JUSTICE DAY does not participate.