2016 CO 12

**The PEOPLE of the State of Colorado, Petitioner**

v.

**Eduardo Dejesus PEREZ, Respondent**

**Supreme Court Case No. 13SC465**

Supreme Court of Colorado.

February 29, 2016

Rehearing Denied April 4, 2016

Attorneys for Petitioner: Cynthia H. Coffman, Attorney General, Kevin E. McReynolds, Assistant Attorney General, Denver, Colorado

Attorneys for Respondent: Douglas K. Wilson, Public Defender, Andrew C. Heher, Deputy Public Defender, Denver, Colorado

CHIEF JUSTICE RICE delivered the Opinion of the Court.

¶ 1 In this case, we examine the applicability of the culpable mental state, "knowingly," to the elements of identity theft found in section 18–5–902, C.R.S. (2015). We hold that, to be guilty of identity theft, an offender must have used the identifying information of another person with knowledge that the information belonged to an actual person. We also evaluate the trial record in this case to determine whether the evidence supported the jury's conclusion that the respondent, Eduardo Dejesus Perez, was aware that the Social Security number he used belonged to an actual person. We conclude that the evidence was sufficient to support Perez's conviction.

## I. Facts and Procedural History

¶ 2 In 2010, Perez was convicted of identity theft and criminal impersonation for using another person's Social Security number to obtain employment. The evidence showed that the owner of the Social Security number that Perez used was unemployed and receiving government assistance. The victim's caseworker told her that she risked losing her benefits, or suffering other penalties, because she was receiving income from a barbeque restaurant. But the victim was not employed at the restaurant. She then informed the police that she believed someone else was using her Social Security number.

¶ 3 The Colorado Department of Labor provided the police a list of employers who had reported income under the victim's Social Security number during the preceding five years. The list consisted of six restaurants. At trial, the victim testified that she had never worked at any of these restaurants. The investigator called the most recent employer listed—the barbecue restaurant. The restaurant manager confirmed that an employee was using the victim's Social Security number. When the detective went to the restaurant, the manager showed him Perez's employment application, tax documents, and a copy of the Social Security card that Perez had provided when he began working. All these documents listed the vic-

tim's Social Security number. The detective arrested Perez.

¶ 4 At trial, the victim, the investigating detective, and the restaurant manager testified. An investigator from the Colorado Department of Labor's Fraud Investigation Unit also testified, discussing the wage inquiry he had prepared regarding the victim's Social Security number. Perez did not testify or call any witnesses.

¶.5 At the close of evidence, Perez moved for judgment of acquittal on both counts, arguing that the prosecution failed to provide sufficient evidence to support the charges. Perez contended that the prosecution failed to prove that he knew the Social Security number belonged to an actual person, when he could have believed that the number was fabricated. The trial court agreed that the prosecution must prove that Perez knew the number belonged to an actual person. However, after discussing the evidence and the reasonable inferences that could be drawn from the evidence, the court denied Perez's motion for a judgment of acquittal. The trial court instructed the jury that, in order to convict Perez, it must find that he "knowingly used the personal identifying information of another person, without permission or lawful authority." The jury convicted Perez on both charges, and Perez appealed.

¶ 6 The court of appeals concluded that the identity-theft statute requires an offender to know that the Social Security number he used belonged to an actual person. *People v. Perez*, 2013 COA 65, ¶¶ 15, 33, —— P.3d.——. Turning to the question of the sufficiency of the evidence, the court of appeals disagreed with the potential inferences that could have supported that conclusion. *Id.* at ¶¶ 40–50. The court of appeals denied that a rational juror could have concluded that Perez's repeated use of the Social Security number–with as many as six different employers over five years–suggested that Perez knew the number belonged to an actual person. *Id.* at ¶¶ 43–47. It was also concerned by what it

saw as a lack of direct evidence concerning how Perez obtained the victim's Social Security number and whether Perez knew that a valid Social Security number was required for him to receive wages. *Id.* at ¶¶ 40–42. The court of appeals thus concluded that the evidence was insufficient to support the jury's determination that Perez knew that the Social Security number he was using belonged to an actual person. *Id.* at ¶¶ 38, 51.

¶ 7 The People petitioned for certiorari. We granted certiorari to consider whether Colorado's identity-theft statute, section 18–5–902, requires proof that the offender knew the information he exploited belonged to an actual person, and whether the evidence in this case supported Perez's conviction.[1]

## II. Standard of Review

¶ 8 This case raises issues of both statutory interpretation and sufficiency of the evidence. We review questions of statutory interpretation de novo. *People v. Cross*, 127 P.3d 71, 73 (Colo.2006). For a sufficiency of the evidence claim, we review the record de novo to determine whether the evidence, when viewed in the light most favorable to the prosecution, was both "substantial and sufficient" to support the conclusion by a reasonable mind that the defendant was "guilty beyond a reasonable doubt." *Dempsey v. People*, 117 P.3d 800, 807 (Colo.2005); *People v. Bennett*, 183 Colo. 125, 515 P.2d 466, 469 (1973).

## III. Analysis

¶ 9 We begin with the statutory interpretation question. We hold that section 18–5–902 requires the People to prove that an offender knew that the identifying information that he used belonged to another person. We next assess whether sufficient evidence supported Perez's conviction. Because we find that the record supported multiple reasonable inferences that could lead to the conclusion that

---

1. Specifically, we granted certiorari to review the following issue:

   Whether the court of appeals erred in concluding Colorado's identity theft statute, section 18–5–902, C.R.S. (2015), requires proof that the offender knew the information he exploited

belonged to a real person, and if so, whether no rational juror could reasonably infer that an offender knew the social security number he used over a five-year period belonged to a real person.

Perez knew that the Social Security number he was using belonged to another person, we hold that a reasonable jury could conclude that Perez was guilty of identity theft beyond a reasonable doubt.

### A. To Commit Identity Theft, an Offender Must Have Known That the Identifying Information Belonged to Another Person.

¶ 10 The People first argue that the identity-theft statute, section 18-5-902, requires proof only that the defendant knowingly used identifying information that belonged to another person and that it does not matter whether the defendant knew that the information belonged to another person.[2] We disagree.

¶ 11 The General Assembly has set forth the way in which it intends mens rea provisions to be read in criminal statutes. More specifically, section 18-1-503(4), C.R.S. (2015), provides that, "[w]hen a statute defining an offense prescribes as an element thereof a specified culpable mental state, that mental state is deemed to apply to every element of the offense unless an intent to limit its application clearly appears." Thus, as applied here, "knowingly" will apply to the element that the identifying information belonged to another person unless a contrary intention clearly appears. We see no such clear contrary intention.

¶ 12 Ordinary English grammar and the rules of statutory interpretation compel the conclusion that the statutory term "knowingly" applies to the phrase "of another." Moreover, even if the statutory language were ambiguous in this case, we find no legislative intent to limit the applicability of the culpable mental state to exclude the

phrase "of another." Therefore, to be guilty of identity theft, an offender must have knowingly used the identifying information of another and must have known that the information belonged to an actual person.

¶ 13 The statutes at issue in this case, section 18-5-902, defines the crime of identity theft:

(1) A person commits identity theft if he or she:

(a) Knowingly uses the personal identifying information, financial identifying information, or financial device of another without permission or lawful authority with the intent to obtain cash, credit, property, services, or any other thing of value or to make a financial payment. . . .

¶ 14 The U.S. Supreme Court recently interpreted a similar identity-theft statute in *Flores–Figueroa v. United States*, 556 U.S. 646, 650–52, 129 S.Ct. 1886, 173 L.Ed.2d 853 (2009). While not binding on this court, the analysis in *Flores–Figueroa* provides us with guidance for interpreting a similar statute.[3] *See People v. Riley*, 708 P.2d 1359, 1363 (Colo.1985) (explaining that, "insofar as the provisions of the Colorado statute parallel those of the federal counterparts, judicial authorities construing the federal counterparts are highly persuasive"). The statute at issue in *Flores–Figueroa* imposed a mandatory consecutive two-year prison term on individuals convicted of other crimes if, in relation to those other crimes, the individual "knowingly transfer[ed], possesse[d], or use[d], without lawful authority, a means of identification of another person." 18 U.S.C. § 1028A(a)(1) (2012); *Flores–Figueroa*, 556 U.S. at 647, 129 S.Ct. 1886. The Court concluded that ordinary English grammar and the rules of statutory construction, *Flores–*

---

**2.** This issue was preserved at the trial level. During the jury instruction arguments, the People contended that there was no language in the statute "that require[d] the People to prove that Mr. Perez knew the personal identifying information belonged to another person." *See People v. Melendez*, 102 P.3d 315, 322 (Colo.2004) (explaining that an issue is preserved for appeal when the trial court is "presented with an adequate opportunity to make findings of fact and conclusions of law on [the] issue").

**3.** The People attempt to distinguish *Flores–Figueroa v. United States* from this case by arguing that the statute at issue in that case is substantively different from the statute before us in this case. *See* 556 U.S. 646, 129 S.Ct. 1886, 173 L.Ed.2d 853 (2009). The identity-theft statute in *Flores–Figueroa* increased a defendant's sentence if identity theft occurred in connection with another crime, whereas section 18–5–902 defines a separate crime. *Id.* at 647, 129 S.Ct. 1886; 18 U.S.C. § 1028A(a)(1) (2012). This difference does not affect the way we read or interpret the text of two similarly phrased statutes.

*Figueroa*, 556 U.S. at 650–52, 129 S.Ct. 1886, compelled the conclusion that the prosecution must prove "that the defendant knew that the means of identification at issue belonged to another person," *id.* at 657, 129 S.Ct. 1886. "In ordinary English," the Court concluded, "where a transitive verb has an object, listeners in most contexts assume that an adverb (such as knowingly) that modifies the transitive verb tells the listener how the subject performed the entire action, including the object as set forth in the sentence." *Flores–Figueroa v. United States*, 556 U.S. 646, 650–52, 129 S.Ct. 1886, 173 L.Ed.2d 853 (2009) (explaining the applicable grammar and providing numerous examples of this syntax). As in *Flores–Figueroa*, the plain meaning of our identity-theft statute suggests that "knowingly" applies to the use of the identifying information of another. We therefore find no clear contrary intention in the language of the statute.

¶ 15 But even if the language were not plain, we find no contrary intention in the history or purpose of the identity-theft statute. *See, e.g., Copeland v. People*, 2 P.3d 1283, 1286 (Colo.2000) (concluding that the language and legislative history of the arson statute indicated that the legislature intended to hold an arsonist responsible for the results of the fire he started, regardless of his intent to endanger people or property); *People v. Cross*, 127 P.3d 71 (Colo.2006) (concluding that the harassment by stalking statute did not require the defendant to know that his actions would cause the victim serious emotional distress, based on the statute's statement of purpose and legislative history, which explained that a stalker may hold delusions that the victim returns his feelings, or will return his feelings if he is persistent enough); *cf. Flores–Figueroa*, 556 U.S. at 657, 129 S.Ct. 1886 (finding that the federal statute's legislative history and purpose were inconclusive, and failing to "find indications in statements of its purpose or in the practical problems of enforcement sufficient to overcome the ordinary meaning, in English or through ordinary interpretive practice, of the words that [Congress] wrote").

¶ 16 In 2006, the General Assembly sought to protect victims of identity theft by passing the identity-theft statute. Ch. 289, sec. 8, §§ 18–5–901 to –904, 2006 Colo. Sess. Laws 1317, 1319–23. Testimony leading up to the passage of the identity-theft statute focused on the harm that identity theft causes and the inadequacy of other laws, such as racketeering or criminal impersonation, to address the problem. *See* Hearings on H.B. 06–1326 before the H. Judiciary Comm., 65th Gen. Assemb., 2d Sess. (Feb. 23, 2006) [hereinafter 2006 House Hearing]; Hearings on H.B. 06–1326 before the Sen. Comm. on Judiciary, 65th Gen. Assemb. 2d Sess. (Apr. 24, 2006) [hereinafter 2006 Senate Hearing]. The testimony focused primarily on protecting victims and the importance of using the language "of another" to achieve that goal. *See* Hearings on H.B. 06–1326 before the H. Judiciary Comm., 65th Gen. Assemb., 2d Sess. (Feb. 23, 2006) (statement of Scott Storey, Colo. Dist. Att'y's Council, Dist. Att'y of Jefferson & Gilpin Ctys.). The legislative history does not contain a discussion of either the required culpable mental state or whether that state applied to "of another." *See* 2006 House Hearing; 2006 Senate Hearing.

¶ 17 In 2009, the statute was amended. Ch. 326, secs. 1–6, §§ 18–5–902 through –903.5, 2009 Colo. Sess. Laws 1737, 1737–39 [hereinafter 2009 Amendment]. The amendment added the language, "with the intent" to the identity-theft statute. *Id.* at 1737. This change clarified that, to commit identity theft, an offender "knowingly uses the personal identifying information ... of another without permission or lawful authority WITH THE INTENT to obtain cash ... or any other thing of value." *Id.* This amendment did not affect the culpable mental state that should be applied to the element "of another." *See id.*

¶ 18 The hearings leading to the adoption of the 2009 amendment focused primarily on the new "criminal possession of an identification document" statute and included a discussion of the requisite mental state for that crime,[4] but did not discuss the mental state

4. This testimony, while not directly related to the identity-theft statute, was the only time a culpable mental state was addressed directly in the legislative history. *See* 2009 Senate Hearing.

for section 18–5–902. *See* Hearings on S.B. 09–093 before the Sen. Comm. on Judiciary, 67th Gen. Assemb., 1st Sess. (Feb. 11, 2009) [hereinafter 2009 Senate Hearing]; *see also* 2009 Amendment at 1738.

¶ 19 Therefore, the legislature did not communicate clear intent to limit the applicability of the requisite culpable mental state. The legislative history never addresses the use of the term "knowingly" in section 18–5–902. Unlike *Copeland*, 2 P.3d at 1286, and *Cross*, 127 P.3d 71, where the text, legislative history, or statement of purpose spoke directly to the application of the culpable mental state to other elements of the crime, the legislative history for this statute provides no such insight.

¶ 20 The People argue that this reading of the statute contradicts its purpose. The People point to legislative history suggesting that the purpose of the identity-theft statute was to protect victims and deter offenders from using real victims' identifying information. *See* 2006 House Hearing; 2006 Senate Hearing. It does not follow, however, that the legislature could achieve the goal of protecting victims of identity theft only by making it a crime for an offender to use identifying information regardless of whether he knows that the information belongs to another person. Limiting the knowledge requirement may have provided broader protection for victims, but the opposite proposition—that a defendant must know that the information he uses belongs to an actual person—does not undermine the legislature's goal of protecting victims. *Contra Cross*, 127 P.3d at 72–73, 75 (holding that requiring a stalker to know that his actions would cause serious emotional distress would undermine the law's purpose). Thus, nothing suggests that the legislature intended to express anything other than what it wrote. Accordingly, a defen-

dant must have known that the identifying information belonged to another person. *See* § 18–5–902.

¶ 21 The People also argue that it is difficult to prove that a defendant knew the identifying information belonged to another person. But this alleged difficulty is insufficient to override the clear statutory language. *See Flores–Figueroa*, 556 U.S. at 656, 129 S.Ct. 1886 (rejecting a similar argument and stating that "concerns about practical enforceability are insufficient to outweigh the clarity of the text").

¶ 22 In sum, finding no clearly contrary intention, we conclude that the prosecution must prove that an offender knowingly used personal identifying information and knew that the information belonged to another person.[5]

## B. Sufficient Evidence Supported Perez's Conviction.

■ ¶ 23 The court of appeals concluded that the evidence presented at trial was insufficient to sustain Perez's conviction. *Perez*, ¶ 33. While we agree with the court of appeals' interpretation of the statute, we do not agree with its conclusion that no rational juror could find that Perez knew the Social Security number he used belonged to an actual person. *See id.* at ¶ 38.

■ ¶ 24 To determine whether sufficient evidence supported a conviction, we ask "whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." *Bennett*, 515 P.2d at 469. Evidence is sufficient to sustain a conviction if the quantity and quality of the relevant

---

The use of the word "knowingly" in section 18–5–903.5, C.R.S. (2015), was added to the statute "to make sure that it is not a strict liability offense." 2009 Senate Hearing (statement of Mark Randall, Colo. Dist. Att'y's Council). "Just having the I.D. is not enough, you have to know you have it ... without permission of that person." *Id.* This sole discussion of the use of the word "knowingly" suggests that the legislature used the word to communicate that an offender must know that the identifying information he

possesses or uses belongs to another person. *See id.*

5. The language of the statute does not suggest that the prosecution must prove that the defendant knew that the identifying information he used belonged to a specific victim. *See* § 18–5–902. It requires only that the defendant knew the information belonged to an actual person. *See id.*

evidence would support a fair-minded jury's finding "that the guilt of the accused has been established beyond a reasonable doubt with regard to each essential element of the crime." *People v. Gonzales*, 666 P.2d 123, 127–28 (Colo.1983).

¶ 25 This analysis requires us to "give the prosecution the benefit of every reasonable inference which might be fairly drawn from the evidence." *Id.* at 128. Those inferences, however, must be supported by a "logical and convincing connection between the facts established and the conclusion inferred." *Id.* (quoting *United States v. Bycer*, 593 F.2d 549, 550 (3d Cir. 1979)). A verdict cannot be supported by guessing, speculation, conjecture, or a mere modicum of relevant evidence. *Id.* However, the court should not attempt to "serve as a thirteenth juror or invade the province of the jury." *Bennett*, 515 P.2d at 469. When conflicting evidence exists, the jury must be allowed "to perform its historic fact-finding function." *Gonzales*, 666 P.2d at 128.

¶ 26 Here, the court of appeals held that there was insufficient evidence to support the conclusion that Perez knew the Social Security number he was using belonged to an actual person. The identity-theft statute requires the State to prove that the offender "knowingly use[d] the personal identifying information … of another without permission or lawful authority with the intent to obtain cash, credit, property, services, or any other thing of value." § 18–5–902. "A person acts 'knowingly' or 'willfully' with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists." § 18–1–501(6), C.R.S. (2015).

¶ 27 In this case, at least two reasonable inferences supported the jury's conclusion that Perez was aware that the Social Security number he used belonged to an actual person. First, a reasonable juror could conclude that Perez knew that the tax withholdings from his paycheck were going into someone's account, since they were neither flagged nor returned after several years. Second, a reasonable juror could conclude that Perez knew the Social Security number belonged to an actual person because he had repeatedly tested the number by successfully submitting it to at least four employers over several years.

¶ 28 The trial court relied on the first inference—that Perez knew money was being withheld from his wages and going into an actual person's account—when it denied Perez's motion for a judgment of acquittal. The record showed that Perez supplied the Social Security number on his W–4 tax withholding form and that money was withheld from his wages accordingly. A rational juror could infer that, because the money was never returned, Perez was aware that the withholdings were deposited into another person's account. Therefore, the evidence supported the jury's conclusion that Perez knew the Social Security number belonged to another person.

¶ 29 The court of appeals attempted to refute this inference, citing a lack of evidence that a Social Security number was required to receive wages and a lack of evidence that Perez knew of this requirement. *Perez*, ¶ 41. The record, however, shows that Perez had provided the Social Security number to numerous employers, suggesting that he was fully aware that employers required their employees to provide a Social Security number. Moreover, jurors are permitted to rely on their own life experiences-such as providing Social Security numbers to their employers and having taxes withheld from wages-to support their conclusions. *Kendrick v. Pippin*, 252 P.3d 1052, 1064 (Colo.2011) ("The broader proposition that jurors may apply their general knowledge and everyday experience when deciding cases is generally undisputed."), *abrogated on other grounds by Bedor v. Johnson*, 2013 CO 4, 292 P.3d 924; CJI–Crim. E:01 ("Finally, you should consider all the evidence in light of your observations and experiences in life."). A reasonable juror could conclude that Perez knew that the deductions from his paycheck were attributed to the true owner of the Social Security number, which is exactly what happened in this case.

¶ 30 Second, a reasonable jury could have concluded that Perez knew the Social

Security number belonged to an actual person because he had repeatedly tested the number with numerous employers over the course of several years. The court of appeals acknowledged that "a defendant's repeated and successful testing of the authenticity of a victim's identifying information prior to the crime at issue is powerful circumstantial evidence that the defendant knew the identifying information belonged to a real person as opposed to a fictitious one." *Perez*, ¶ 45 (quoting *United States v. Doe*, 661 F.3d 550, 562–63 (11th Cir.2011)). Here, Perez provided the same Social Security number to as many as six different restaurants—and their respective payroll systems—for over five years. That repetitive testing "is powerful circumstantial evidence" that supports the jury's conclusion that Perez knew that the number belonged to another person. *Doe*, 661 F.3d at 562–63. The evidence in this case supports the inference that, by using the false Social Security number on multiple occasions with multiple parties, Perez was aware that the Social Security number belonged to an actual person. *See* § 18-1-501.

¶ 31 The court of appeals rejected this inference by suggesting that it is possible to use a fictitious number for more than five years. *Perez*, ¶¶ 43–44 (citing *Flores–Figueroa*, 556 U.S. at 647, 129 S.Ct. 1886 (noting that defendant used a fictitious Social Security number for six years, but with only a single employer)). This attempt to refute a reasonable inference that was supported by the record strayed from the proper sufficiency of the evidence inquiry. The question is not whether it is possible to disagree with the inferences, but rather, whether the inferences are reasonable when the evidence is viewed as a whole in the light most favorable to the prosecution. *See Bennett*, 515 P.2d at 469. The jury, not the court, must perform the fact-finding function when conflicting evidence—and conflicting reasonable inferences—are presented. *See Gonzales*, 666 P.2d at 128. A court must not invade the province of the jury by second-guessing its conclusion when the record supports the jury's findings. *See Bennett*, 515 P.2d at 469.

¶ 32 Therefore, because the court of appeals misapplied the substantial evidence test, we reverse its holding that the evidence was insufficient to support Perez's conviction. Instead, we find that the record supported at least two reasonable inferences that the jury may have relied on to conclude that Perez knew the Social Security number he used belonged to another person.

## IV. Conclusion

¶ 33 Because we find no legislative intent to limit the application of the term "knowingly" in section 18-5-902, we conclude that it applies to the phrase "of another." Therefore, to be guilty of identity theft, an offender must knowingly use identifying information of another and must know that the information belongs to another person. We affirm that portion of the court of appeals' decision.

¶ 34 However, we disagree with the court of appeals' conclusion that there was insufficient evidence to support Perez's conviction. We therefore reverse that portion of the court of appeals' opinion and remand the case for proceedings consistent with this opinion.