Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
April 13, 2020

**2020 CO 24**

**No. 18SC684, *People v. Donald*—Criminal Law—Evidence—Sufficiency of the Evidence.**

This case requires the supreme court to determine (1) what role, if any, the prohibition on inference stacking set out in *Tate v. People*, 247 P.2d 665 (Colo. 1952), should play in sufficiency of the evidence challenges in criminal cases and (2) whether sufficient evidence supported the defendant's conviction for violation of bail bond conditions. The supreme court concludes, contrary to the apparent understanding of the division below, that the presence of stacked inferences is not alone dispositive of a sufficiency of the evidence claim. Rather, it is one factor that a court may consider in determining whether the evidence presented satisfied the prevailing substantial evidence test for evidence sufficiency. The supreme court further concludes that the prosecution here presented sufficient evidence to support the defendant's conviction for violating the bail bond condition prohibiting him from leaving the state without permission.

Accordingly, the supreme court reverses the judgment of the division below and remands this case for further proceedings.

**The Supreme Court of the State of Colorado**
2 East 14th Avenue • Denver, Colorado 80203

**2020 CO 24**

**Supreme Court Case No. 18SC684**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 15CA633

**Petitioner:**

The People of the State of Colorado,

v.

**Respondent:**

Laron Antonio Donald.

**Judgment Reversed**
*en banc*
April 13, 2020

**Attorneys for Petitioner:**
Philip J. Weiser, Attorney General
Lisa K. Michaels, Assistant Attorney General
        *Denver, Colorado*

**Attorneys for Respondent:**
Megan A. Ring, Colorado State Public Defender
Jessica K. Pitts, Deputy State Public Defender
        *Denver, Colorado*

**JUSTICE GABRIEL** delivered the Opinion of the Court.

¶1    This case requires us to determine (1) what role, if any, the prohibition on inference stacking set out in *Tate v. People*, 247 P.2d 665 (Colo. 1952), should play in sufficiency of the evidence challenges in criminal cases and (2) whether sufficient evidence supported Laron Antonio Donald's conviction for violation of bail bond conditions.[1]  We conclude, contrary to the apparent understanding of the division below, that the presence of stacked inferences is not alone dispositive of a sufficiency of the evidence claim.  Rather, it is one factor that a court may consider in determining whether the evidence presented satisfied the prevailing substantial evidence test for evidence sufficiency.  We further conclude that the prosecution here presented sufficient evidence to support Donald's conviction for

---

[1] Specifically, we granted certiorari to review the following issues:

1. Whether the court of appeals erred in vacating the defendant's conviction based on its conclusion that the jury could have found the defendant guilty of violating the conditions of his bail bond only by stacking inference upon inference as prohibited in *Tate v. People*, 247 P.2d 665 (Colo. 1952).

2. Whether the court of appeals erred in concluding that the testimony as to the bail bond release process did not give rise to an inference that the defendant had knowledge of the contents of the bond paperwork.

3. Whether sufficient evidence was presented to support the jury's finding that the defendant had knowledge of the bond paperwork.

2

violating the bail bond condition prohibiting him from leaving the state without permission.

¶2     Accordingly, we reverse the judgment of the division below and remand this case for further proceedings.

## I. Facts and Procedural History

¶3     After Donald was arrested and charged with a felony, the district court set bond and announced the next court date. Donald subsequently posted bond and was released from jail. The one-page bond provided that as a condition of his release, Donald was prohibited from leaving the state of Colorado without approval of the court and the surety.

¶4     Donald failed to appear at his next scheduled court date, and the court issued a warrant for his arrest.

¶5     Five weeks later, Donald was driving in Mississippi when a police officer pulled him over for a traffic violation. The officer ran Donald's name and discovered that he had warrants out of Colorado. The officer thus arrested him.

¶6     Donald was subsequently extradited to Colorado and charged with several counts of violation of bail bond conditions under section 18-8-212(1), C.R.S. (2019). One count charged that Donald had "knowingly violated a condition of bond by leaving the State of Colorado." Another charged that he had "knowingly failed to

3

appear for trial or other proceedings." Donald pleaded not guilty to these counts, and the matter proceeded to trial.

¶7    At trial, the bondsperson testified on direct examination that (1) she had signed Donald's appearance bond; (2) one of the conditions set forth in that bond was that Donald could not leave the state without the approval of the court and the surety; and (3) "only on an accident from . . . the jail" would someone be released from custody without signing the bond paperwork and accidents like that happened "[v]ery, very seldom." On cross-examination, the bondsperson added that if Donald signed the paperwork, he would not have done so in her presence. Rather, he would have signed it with the deputies at the jail. Thus, the bondsperson could not say whether the party's signature on the paperwork was Donald's.

¶8    The arresting officer from Mississippi then testified that when he approached Donald after pulling him over, Donald appeared "very nervous" and was shaking and sweating.

¶9    At the conclusion of the prosecution's case, Donald moved for a judgment of acquittal, arguing that the evidence was insufficient to show that he had signed the bond paperwork and therefore the evidence was insufficient to show that he had actual knowledge of the bail bond conditions listed therein. In support of this argument, Donald pointed out that no witness had either identified Donald's

4

signature on the bond paperwork or testified that the witness went over the paperwork with Donald and explained to him that he was not to leave the state.

¶10    After hearing the prosecution's response, the trial court denied Donald's motion. In so ruling, the court acknowledged that the bondsperson did not identify Donald's signature on the bond paperwork and therefore the prosecution was left to rely on the bondsperson's description of the bond process. The court then observed that although the testimony was limited, the bondsperson described the process as "you can't get out of jail unless you sign this paperwork," and the prosecution had introduced into evidence the paperwork, which was signed and which contained the restriction at issue. Although the court viewed the matter as "a close call," it found this evidence, when viewed as a whole and in the light most favorable to the prosecution, sufficient to meet the prosecution's burden.

¶11    Donald did not then call any witnesses in his defense, and the parties proceeded to present their closing arguments. During his closing, Donald's counsel argued that the prosecution had failed to prove that Donald knew that as a condition of his bond, he could not leave the state. Counsel noted the absence of evidence that anyone had gone over the bond paperwork with Donald or that Donald had read the paperwork. To the contrary, he said, the evidence suggested that Donald was willing to sign whatever he needed to sign to get out of jail. And

5

as for Donald's signature on the paperwork, counsel argued, "[W]e don't even know he signed it." Nonetheless, counsel conceded that he did, stating, "[W]e'll spot him [i.e., the prosecutor] that, that's his signature, sure."

¶12 The jury ultimately convicted Donald of the two bail bond violation counts, and the court sentenced him to consecutive eighteen-month terms in the Department of Corrections.

¶13 Donald appealed and, among other things, renewed his argument that the prosecution had failed to establish beyond a reasonable doubt that he had knowingly violated the bond condition preventing him from leaving the state without permission. *People v. Donald*, 2018 COA 103, ¶ 1, __ P.3d __. In a unanimous, published opinion, the division agreed and vacated Donald's conviction for violation of that bail bond condition. *Id.* at ¶ 29.

¶14 In so ruling, the division began by concluding that the bondsperson's testimony regarding the jail's regular practice of having prisoners sign bond paperwork before they are released supported an inference that Donald had, in fact, signed the paperwork. *Id.* at ¶ 22. The division stated, however, that the act of signing the paperwork did not establish actual knowledge of the bond conditions set forth therein. *Id.* Rather, to infer that Donald had actual knowledge of those conditions, additional inferences were required, such as, for example, that Donald was afforded and took the opportunity to read the bond paperwork with

6

sufficient care to learn of the bond conditions or that he was given a copy of the paperwork to review later and did so. *Id.* at ¶¶ 22–23. The division noted, however, that the prosecution had presented no evidence regarding the circumstances surrounding the signing of the bond paperwork. *Id.* at ¶ 23. Nor did the prosecution present any evidence that a released inmate is given a copy of the paperwork that he or she signed. *Id.* As a result, to find that Donald had actual knowledge of the conditions, the jury would have had to make inferences (e.g., that Donald was afforded the opportunity to read the bond paperwork and did so either when he signed it or thereafter) that rested on another inference (i.e., that Donald had signed the bond paperwork consistent with the jail's routine practice). *Id.* at ¶ 24. The division opined, "It is the necessity of this inference stacking without any additional evidence to support it that renders the evidence insufficient to support Donald's conviction of [violation of the bail bond condition at issue]." *Id.* at ¶ 22. The division so concluded because under *Tate*, a "presumption may not rest on presumption or inference on inference." *Donald*, ¶ 24 (quoting *Tate*, 247 P.2d at 672).

¶15 In reaching this conclusion, the division was unpersuaded by the People's argument that Donald's demeanor during the traffic stop in Mississippi provided additional evidence that he knew of the bond condition prohibiting out-of-state travel. *Id.* at ¶ 27. The division observed that the officer's testimony provided no

7

indication beyond mere speculation that Donald's nervousness was related to his awareness that he was in violation of his bond conditions. *Id.*

¶16 The People then petitioned this court for certiorari review, and we granted that petition.

## II. Analysis

¶17 We begin by addressing the applicable standard of review in this case. We then consider whether the division erred in relying on the *Tate* court's prohibition on inference stacking to vacate Donald's conviction for violation of the bail bond condition prohibiting him from leaving the state without permission. We conclude, contrary to the apparent understanding of the division below, that the presence of stacked inferences is not alone dispositive of a sufficiency of the evidence claim. Rather, it is one factor that a court may consider in determining whether the evidence presented satisfied the prevailing substantial evidence test for evidence sufficiency. Finally, we address whether the evidence presented at trial, when viewed as a whole and in the light most favorable to the prosecution, was substantial and sufficient to support a conclusion by a reasonable mind that Donald knowingly violated the bail bond condition prohibiting him from leaving the state without permission. We conclude that it was.

## A. Standard of Review

¶18 We review sufficiency of the evidence claims de novo. *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010). To determine whether the prosecution presented sufficient evidence to support a conviction, we ask "whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." *Id.* (quoting *People v. Bennett*, 515 P.2d 466, 469 (Colo. 1973)).

¶19 This test requires us to give the prosecution the benefit of all reasonable inferences that might fairly be drawn from the evidence. *People v. Perez*, 2016 CO 12, ¶ 25, 367 P.3d 695, 701. Such inferences, however, must be supported by a "logical and convincing connection between the facts established and the conclusion inferred." *Id.* (quoting *People v. Gonzalez*, 666 P.2d 123, 128 (Colo. 1983)). Thus, "[a] verdict cannot be supported by guessing, speculation, conjecture, or a mere modicum of relevant evidence." *Id.*; *see also People v. Serra*, 2015 COA 130, ¶¶ 38–39, 361 P.3d 1122, 1131 (determining that insufficient evidence supported the defendant's conviction for harassment when any conclusion that the division could draw about the defendant's requisite intent would be "purely speculative").

9

## B. Inference Stacking

¶20     In *Tate*, 247 P.2d at 671–72, we addressed a challenge to the sufficiency of the evidence underlying a second degree murder conviction.  The defendant was the former wife of the victim.  *Id.* at 667.  Although the couple had divorced, they continued living together in the family home, and it was undisputed that there was no difficulty between them and that the defendant had provided constant care to the victim, who had suffered from medical problems.  *Id.*

¶21     One day, the defendant returned home and found the victim tied to a chair, having been shot in the head with an automatic pistol nested in a nearby "contraption."  *Id.* at 668.  Notably, the record indicated that the victim had experienced suicidal thoughts in the past and, in fact, had attempted suicide before.  *Id.* at 667.  Allegedly panic stricken, the defendant took the body out, dug a shallow grave and buried it, poured fuel oil all over the body and the dirt, covered the grave with a sheet of corrugated iron, and then piled pieces of lumber, posts, and other such material on the grave and placed a chicken coop on top of it.  *Id.* at 668.  The defendant then thoroughly cleaned the room in which she had found the victim's body.  *Id.*

¶22     The defendant was subsequently charged with and tried for the victim's murder.  *Id.* at 666.  At trial, the defendant denied killing the victim and argued that he had committed suicide.  *Id.* at 670.  This position was supported by the

testimony of the autopsy physician, who testified that the wounds causing death could have been self-inflicted and therefore the case could have been one of suicide. *Id.* The jury nonetheless convicted the defendant, and she appealed, arguing, among other things, that no evidence supported her conviction. *Id.* at 666–67.

¶23 At the time *Tate* was decided, the applicable law allowed proof by circumstantial evidence, but if all of the evidence was circumstantial, then the evidence had to "exclude every reasonable hypothesis except guilt." *Id.* at 670. After reviewing the record in light of these standards, we perceived no evidence to support a jury finding of willfulness, deliberation, or premeditation, deeming the record "wholly barren of the slightest indication of these essential elements of the crime charged." *Id.* at 671. We further opined that any finding in this case of deliberation, premeditation, willfulness, or any of the other elements of either first or second degree murder could only have been based on an initial suspicion-based presumption followed by a further presumption. *Id.* at 672. We concluded that such evidence was insufficient to sustain the defendant's conviction because "[p]resumption and inferences may be drawn *only from facts established*, and presumption may not rest on presumption or inference on inference." *Id.*

¶24 Two years later, in *Holland v. United States*, 348 U.S. 121, 139–40 (1954), the Supreme Court considered the proper standards to be applied in determining

11

sufficiency of the evidence claims.  As pertinent here, the Court concluded that (1) circumstantial evidence is "intrinsically no different from testimonial evidence" and (2) when only circumstantial evidence is presented, to sustain a conviction, the evidence need not exclude every reasonable hypothesis other than guilt.  *Id.*  Instead, in the case of both testimonial and circumstantial evidence, the jury must use its experience with people and events to weigh the possibilities.  *Id.* at 140.  The Court then opined, "If the jury is convinced beyond a reasonable doubt, we can require no more."  *Id.*

¶25    Based on *Holland* and its progeny in the federal courts, we ultimately adopted the substantial evidence test as the proper means for addressing sufficiency of the evidence claims on appellate review.  *Bennett*, 515 P.2d at 469. As noted above, this test requires us to determine "whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt."  *Id.*  In adopting this test, we noted that it "affords the same status to both direct and circumstantial evidence."  *Id.*  We thus "cast aside as outmoded and as confusing" the requirement that when the prosecution's evidence is wholly circumstantial, the prosecution must exclude every reasonable hypothesis other than that of guilt.  *Id.*

12

¶26    In light of this evolution of our test for sufficiency of the evidence claims, the question becomes what role, if any, inference stacking plays in deciding such a claim. For several reasons, we conclude that it is one factor that a court may consider in determining whether the evidence satisfied the prevailing substantial evidence test for evidence sufficiency.

¶27    First, concluding that stacked inferences are absolutely prohibited, as the division below seemed to suggest, is inconsistent with our substantial evidence test and with the above-described development of our law. As noted above, the inference-upon-inference prohibition was premised on now-outdated law requiring the prosecution to exclude every reasonable hypothesis other than guilt in cases premised solely on circumstantial evidence. *See Tate*, 247 P.2d at 670. Our substantial evidence test, however, does not distinguish between direct and circumstantial evidence. *Bennett*, 515 P.2d at 469. Rather, it allows jurors to draw reasonable inferences from both direct and circumstantial evidence. *See Perez*, ¶ 24, 367 P.3d at 700; *Clark*, 232 P.3d at 1291; *Bennett*, 515 P.2d at 469.

¶28    Second, following the modern trend signaled in *Holland*, 348 U.S. at 139–40, numerous courts have rejected an absolute prohibition on stacked inferences, concluding instead that the question is simply whether the direct and circumstantial evidence, including the reasonable inferences to be drawn therefrom, together warrant a jury's finding of guilt beyond a reasonable doubt.

13

*See, e.g.*, *United States v. Shahane*, 517 F.2d 1173, 1177–78 (8th Cir. 1975) (rejecting the view that stacked inferences are necessarily invalid or impermissible and concluding that the proper question is whether the evidence was sufficient to convince the jury beyond a reasonable doubt); *United States v. Harris*, 435 F.2d 74, 89 (D.C. Cir. 1970) ("The rule is not that an inference, no matter how reasonable, is to be rejected if it in turn, depends upon another reasonable inference; rather, the question is merely whether the total evidence, including reasonable inferences, when put together is sufficient to warrant a jury to conclude that defendant is guilty beyond a reasonable doubt.") (quoting *DeVore v. United States*, 368 F.2d 396, 399 (9th Cir. 1966)).

¶29    This is not to say, however, that the reliance on stacked inferences is irrelevant to the analysis of a sufficiency of the evidence claim.  As the Tenth Circuit observed in *United States v. Summers*, 414 F.3d 1287, 1295 (10th Cir. 2005), "The rule that prohibits the stacking of inference upon inference merely indicates that at some point along a rational continuum, inferences may become so attenuated from underlying evidence as to cast doubt on the trier of fact's ultimate conclusion."  Accordingly, the court opined that the inference-upon-inference principle "serves as an appropriate signpost, cautioning reviewing courts to measure the 'gap' between fact and conclusion before acquiescing in the jury's leap." *Id.*

¶30    In accordance with such reasoning, numerous federal and state appellate courts have concluded that although inference stacking is not absolutely prohibited, the reliance on stacked inferences is pertinent to the analysis of a sufficiency of the evidence claim because a chain of inferences can become so attenuated that reliance on it to sustain a conviction would be unreasonable and would amount to speculation. *See, e.g.*, *Shahane*, 517 F.2d at 1178 (noting that the chance of a jury's error or speculation in drawing conclusions from proved facts "increases in proportion to the width of the gap between the underlying fact and ultimate conclusion where the gap is bridged by a succession of inferences, each based upon the preceding one," but nonetheless rejecting an outright ban on inference stacking because it is "too much to say . . . that an inference is necessarily invalid or impermissible" merely because it is based on a fact established by a prior inference); *Vaccarezza v. Sanguinetti*, 163 P.2d 470, 476–77 (Cal. Ct. App. 1945) (noting that "[t]he only fallacy that may occur in . . . reasoning [based on stacked inferences] is where a deduced fact is based upon circumstantial evidence that is unreliable, is too remote or is too conjectural"); *Southworth v. Commonwealth*, 435 S.W.3d 32, 46 (Ky. 2014) (noting that the modern trend is to abandon rules limiting the use of circumstantial evidence, including the inference-upon-inference rule, and that Kentucky had replaced such an absolute rule with a principle that condemns only inferences that build on inferences in an

15

unreasonable manner); *cf. United States v. Ravich*, 421 F.2d 1196, 1204 n.10 (2d Cir. 1970) ("[W]e reject as untenable the often urged claim that an inference may not be grounded on an inference. The length of the chain of inferences necessary to connect the evidence with the ultimate fact to be proved necessarily lessens the probative value of the evidence, and may therefore render it more susceptible to exclusion as unduly confusing, prejudicial, or time-consuming, but it does not render the evidence irrelevant.") (citations omitted).

¶31 We agree with the reasoning in these cases and follow that reasoning here.

¶32 Finally, if inference stacking were absolutely prohibited, "then the exercise of logic, which frequently employs inference-derived inferences, would not be allowed to the jury." *Southworth*, 435 S.W.3d at 45. We perceive no basis for unnecessarily restricting a jury's ability to assess the evidence before it in this way.

## C. Sufficient Evidence Supported Donald's Conviction

¶33 Having thus determined that the substantial evidence test for sufficiency of the evidence claims does not bar the stacking of inferences, we turn to the question of whether substantial and sufficient evidence supported Donald's conviction for violation of the bail bond condition prohibiting him from leaving the state without permission. We conclude that it did.

¶34 As noted above, we will affirm a conviction when the evidence, viewed as a whole and in the light most favorable to the prosecution, is substantial and

16

sufficient to support a finding by a reasonable mind that the defendant is guilty of the charged crime beyond a reasonable doubt. *Clark*, 232 P.3d at 1291.

¶35 To establish a violation of bail bond conditions, the prosecution must prove, as pertinent here, that the defendant "*knowingly* violat[ed] the conditions of the bail bond." § 18-8-212(1) (emphasis added).

¶36 The criminal code defines "knowingly" as follows:

> A person acts "knowingly" . . . with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists. A person acts "knowingly". . . with respect to a result of his conduct, when he is aware that his conduct is practically certain to cause the result.

§ 18-1-501(6), C.R.S. (2019).

¶37 Accordingly, and as the parties here appear to agree, to establish a violation of bail bond conditions, the prosecution must prove that the defendant had actual knowledge of the bond condition, not merely that he or she should have known of the condition. *See* §§ 18-1-501(6); 18-8-212(1). Knowledge, however, may be inferred from circumstantial evidence. *Cf. People v. Phillips*, 219 P.3d 798, 800 (Colo. App. 2009) (noting that sufficient circumstantial evidence existed from which the jury could infer that the defendant formed the necessary intent to commit the crime at issue).

¶38 Here, the bondsperson testified that (1) she filled out and signed Donald's appearance bond, and her employer posted the bond on Donald's behalf; (2) if

Donald signed the paperwork, he would have done so with the deputies at the jail; and (3) "[o]nly on an accident" by the jail would someone be released without signing the paperwork.

¶39 In addition, the prosecution introduced into evidence a copy of Donald's signed bond paperwork. This document was only one page long, and it stated, under the bolded text "**Additional Conditions**," "Party may not leave the state without approval of the Court and the surety."

¶40 And, as noted above, defense counsel ultimately conceded that Donald had signed the bond paperwork.

¶41 In light of the foregoing evidence and the requirement that we must view the evidence as a whole in the light most favorable to the prosecution, we conclude that a reasonable jury could have concluded that Donald had, in fact, signed the bond paperwork. In addition, given that the paperwork consisted of a single page and that the condition at issue was the first condition listed under the bolded heading, "**Additional Conditions**," we further conclude that a reasonable jury could have found that Donald saw the condition and therefore was aware of it. The facts that the evidence was disputed (and may even have been thin on the issue of Donald's knowledge) and that reasonable alternative inferences were possible do not alter our conclusions, given that we must construe the evidence in the light most favorable to the prosecution.

¶42    Accordingly, we conclude that the evidence was substantial and sufficient to support Donald's conviction for violation of the bail bond condition prohibiting him from leaving the state without permission.  In light of our foregoing analysis, we need not address whether the officer's testimony that Donald seemed "nervous" when he was pulled over in Mississippi provided further evidence of Donald's knowledge of the bail bond condition at issue.

## III.  Conclusion

¶43    For the foregoing reasons, we conclude that the presence of stacked inferences is not alone dispositive of a sufficiency of the evidence claim.  Rather, it is one factor that a court may consider in determining whether the evidence presented satisfied the prevailing substantial evidence test for evidence sufficiency.  We further conclude that the prosecution presented sufficient evidence here to support Donald's conviction for violation of the bail bond condition prohibiting him from leaving the state without permission.

¶44    Accordingly, we reverse the judgment below and remand this case for further proceedings consistent with this opinion.