# IN THE SUPREME COURT OF IOWA

No. 18–1623

Submitted November 17, 2020—Filed January 29, 2021

**STATE OF IOWA,**

Appellee,

vs.

**ANTHONY ERNST,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Dubuque County, Michael J. Shubatt, Judge.

State seeks further review from court of appeals' reversal of the defendant's conviction for attempted burglary. **DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF CONVICTION AFFIRMED.**

Oxley, J., delivered the opinion of the court, in which all justices joined. Appel, J., filed a special concurrence.

Martha J. Lucey, State Appellate Defender, and Bradley M. Bender (argued), Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Louis S. Sloven (argued), Assistant Attorney General, C.J. May III, Count Attorney, and Brigit M. Barnes and Ry Allen Meyer, Assistant County Attorneys, for appellee.

**OXLEY, Justice.**

We have long recognized that specific intent crimes are seldom proved by direct evidence of the defendant's intent, leaving the State to rely on inferences to be drawn from the surrounding circumstances to convince a jury beyond a reasonable doubt that the defendant had a sufficiently culpable mental state to support a conviction. In this case, the defendant convinced the court of appeals that his conviction could not be supported on the theory that the jury improperly stacked inferences on top of other inferences to find he attempted to burglarize a garage with the intent to commit a theft. We disagree and conclude the State's evidence— and all reasonable inferences from that evidence—was sufficient to support the defendant's conviction.

## I. Factual Background and Proceedings.

Anthony Ernst's parole officer lives on a dead-end gravel road in rural Cascade with her husband. The parole officer's husband discovered the service door to their garage had been pried open while they were at work on August 21, 2017. The door was closed and locked when they left, but the door was ajar with the knob still locked when he returned home. The weather stripping around the door was damaged with what looked like pry marks near the handle and near the bottom of the door. Nothing was missing from the garage, and there was no indication anyone had entered the house through the locked interior door. The parole officer contacted police about the break-in, and an investigation followed.

Video footage from a business at the top of the dead end road showed only one vehicle drove down the road toward the parole officer's house that day that was unaccounted for by local traffic, which passed the business at 10:31 a.m. and returned approximately thirteen minutes later. Further investigation led to Ernst based on his ownership of a white police model

Crown Victoria, the same type of car observed in the footage. The parole officer identified the vehicle from the video footage as belonging to Ernst based on the distinct pattern of chipped paint on the car.

Ernst was subsequently arrested and charged with burglary in the third degree with intent to commit assault and intent to commit theft. At the close of the State's evidence at trial, Ernst moved for a judgment of acquittal. The district court granted the motion in part, concluding the State failed to present sufficient evidence for a jury to find he intended to commit an assault, but it did present sufficient evidence for the jury to find he intended to commit a theft. Ernst proceeded to trial on the theft version of burglary.

The jury returned a guilty verdict on the lesser included attempted burglary charge. The district court entered judgment against Ernst and sentenced him to the maximum two-year sentence. Ernst appealed, challenging the sufficiency of the evidence. The court of appeals reversed Ernst's conviction, concluding the State's only direct evidence showed Ernst in the area but the remaining circumstantial evidence was too speculative to support his conviction because it "require[d] a stacking of inferences: first the inference [Ernst] forced entry to the garage, then the inference he did so with intent to commit theft." The State applied for, and we granted, further review to address the court of appeals' conclusion that stacked inferences could not support Ernst's conviction.

**II. Analysis.**

To prove Ernst was guilty of attempted burglary, the jury instructions required the State to prove he (1) attempted to enter the garage, (2) which was an occupied structure, (3) without permission or authority (4) with the specific intent to commit theft. On appeal, Ernst contends the State failed to present sufficient evidence to establish the

first and fourth elements. Alternatively, he argues he is entitled to a new trial because the weight of the evidence preponderates against his conviction. Finally, Ernst claims his trial counsel was ineffective for not challenging the admission of cell phone records and related testimony at trial. We address each contention in turn.

**A. Sufficiency of the Evidence.** "We review the sufficiency of the evidence for correction of errors at law." *State v. Kelso-Christy*, 911 N.W.2d 663, 666 (Iowa 2018). We consider all evidence, not just the evidence supporting the conviction, and view the evidence in the light most favorable to the State, "including legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence." *State v. Tipton*, 897 N.W.2d 653, 692 (Iowa 2017) (quoting *State v. Williams*, 695 N.W.2d 23, 27 (Iowa 2005)).

In evaluating the sufficiency of the evidence, we consider whether "the finding of guilt is supported by substantial evidence in the record." *Kelso-Christy*, 911 N.W.2d at 666 (quoting *State v. Meyers*, 799 N.W.2d 132, 138 (Iowa 2011)). Substantial evidence "means a person may not be convicted based upon mere suspicion or conjecture." *Tipton*, 897 N.W.2d at 692. "Substantial evidence exists when the evidence 'would convince a rational fact finder the defendant is guilty beyond a reasonable doubt.' " *Kelso-Christy*, 911 N.W.2d at 666 (quoting *Meyers*, 799 N.W.2d at 138).

Ernst contends the State failed to prove: (1) anyone attempted to enter the garage, (2) if someone attempted to enter the garage, that person was Ernst, and (3) if Ernst did enter the garage, he did so with the specific intent to commit theft. We conclude the State presented sufficient evidence to support Ernst's conviction.

With respect to establishing Ernst as the perpetrator of the attempted burglary, the State presented evidence that Ernst was off work

on August 21 to attend a child support hearing in the afternoon. Footage from a traffic camera located one block from Ernst's Dubuque home showed Ernst left home around 8:45 a.m. and returned around 12:28 p.m. Other city traffic cameras showed Ernst coming into Dubuque at 12:20 p.m. on Highway 151. A vehicle matching Ernst's vehicle, including its distinctive chipped paint pattern, was seen on video surveillance of a business near the crime scene driving down the dead-end road toward the parole officer's house at 10:31 a.m. and driving back thirteen minutes later. It was the only unaccounted vehicle on the dead-end road that day. Ernst's probation officer identified the car from the video surveillance as belonging to Ernst. The video also revealed a driver wearing a brightly colored sleeveless shirt, similar to the shirt Ernst was seen wearing later that day at his child support hearing.

"While opportunity to commit a crime or mere presence at the scene ordinarily is not a sufficient corroborative circumstance from which to infer guilt," substantial evidence of guilt can exist when presence is considered with other evidence. *State v. Schrier*, 300 N.W.2d 305, 309 (Iowa 1981). Significant evidence in addition to Ernst's presence in the area supports his conviction. The State presented evidence that someone had pried open the service door, contrary to Ernst's argument that the wind or an animal caused the door to be opened. That evidence included testimony from both homeowners that the door was closed and locked when they left that morning, evidence of pry marks they testified were not previously on the weather stripping and doorframe, and evidence that the door handle was still locked although the door was ajar when the husband arrived home. Investigator Grant testified at trial, unchallenged, there had been a forced entry.

From the direct evidence that Ernst was driving the only unaccounted-for vehicle on the road that day, coupled with the circumstantial evidence that someone had pried open the service door, the jury could have reasonably inferred that Ernst was the one who pried open the door. This evidence provides substantial evidence to support the first three elements of the burglary charge—that Ernst entered the garage[1] without authorization.

The State was also required to prove Ernst entered the garage with the specific intent to commit theft. "Specific intent is seldom capable of direct proof." *State v. Walker*, 574 N.W.2d 280, 289 (Iowa 1998). Therefore, specific intent will often "be shown by circumstantial evidence and the reasonable inferences drawn from that evidence." *Id.*

We first note that intent to commit theft can "reasonably be inferred from the evidence of surreptitious entry and other circumstances." *State v. Sangster*, 299 N.W.2d 661, 663 (Iowa 1980); *see also State v. Oetken*, 613 N.W.2d 679, 686 (Iowa 2000) (en banc) ("An intent to commit theft may be inferred from an actual breaking and entering of a building which contains things of value."); *State v. Erving*, 346 N.W.2d 833, 836 (Iowa 1984) ("[E]xperience teaches that, in the great majority of cases of unlawful breaking and entering, the act [done is] with intent to steal." (quoting *State v. Allnutt*, 261 Iowa 897, 906, 156 N.W.2d 266, 271 (1968), *overruled on other grounds by State v. Gorham*, 206 N.W.2d 908 (Iowa 1973) (en banc))); *State v. Woodruff*, 208 Iowa 236, 240, 225 N.W. 254, 255 (1929) ("People are not accustomed, in the nighttime, to enter the homes of others, when asleep, with innocent purposes. The usual object is theft, and this is the inference ordinarily to be drawn, in the absence of explanation, from

---

[1]Ernst conceded the garage was an "occupied structure," the second element under the jury instructions.

breaking and entering at night, accompanied by flight upon discovery, even though nothing has been taken."). In *State v. Erving*, we found the intent element satisfied from evidence the defendant removed a glass panel from a locked and closed pharmacy area and testimony by the pharmacist that "removal of the glass panel would greatly facilitate entry into the pharmacy and access to the various controlled substances stored there." 346 N.W.2d at 835.

The jury's finding Ernst intended to commit a theft is supported by substantial evidence. The State presented evidence that Ernst was in the area of the garage between 10:31 a.m. and 10:44 a.m., a time he had reason to know both homeowners would not be home. Ernst was aware of his parole officer's work schedule, and Ernst's boss testified the parole officer's husband worked for a construction company that was often on the same worksite as Ernst. Ernst's sister testified she and Ernst had previously located the parole officer's address from incident reports obtained from the City of Dubuque's website. This additional evidence— that Ernst knew his parole officer's address and knew she and her husband would likely be away from home in the midmorning hours— provides sufficient additional circumstances to support the inference that Ernst broke into the garage with the intent to take something. *See Commonwealth v. Madison*, 397 A.2d 818, 824 (Pa. Super. 1979) ("Another factor [indicating intent to commit theft] may be whether the evidence indicates that the defendant thought the building was unoccupied at the time of the entry.").

Additionally, "[a] false story told by a defendant to explain or deny a material fact against him is by itself an indication of guilt and . . . is relevant to show that the defendant fabricated evidence to aid his defense." *State v. Cox*, 500 N.W.2d 23, 25 (Iowa 1993). Ernst denied he was

anywhere near Cascade despite the video footage of a car identified as Ernst's being driven down the dead-end road toward his parole officer's house. Instead, he presented his sister and his mother as alibi witnesses, both of whom testified Ernst had visited first his sister in Bernard, Iowa, and then his mother in Epworth, Iowa, on the morning of August 21. However, his sister admitted she failed to tell Investigator Grant this information when he interviewed her. Similarly, Ernst's mother was confused about the timing of Ernst's visit, and her testimony that Ernst drove her into Dubuque to run errands and then dropped her off was inconsistent with traffic camera footage showing Ernst entered Dubuque on Highway 151 at 12:20 p.m. and returned alone to his home in Dubuque at 12:28 p.m. The jury was free to disbelieve both witnesses' testimony, leaving them to conclude Ernst offered a false story of his whereabouts the morning of August 21.

Although Ernst was convicted of only attempted burglary because nothing was taken from the garage, the lack of a completed burglary does not negate the intent element of Ernst's conviction. *See State v. Morelock*, 164 N.W.2d 819, 822 (Iowa 1969) (holding failure to complete a breaking and entry does not prevent jury from finding an unlawful intent); *Allnutt*, 261 Iowa at 905–06, 156 N.W.2d at 271 (noting intent to steal was not negated merely because nothing was stolen). As it turned out, the garage was immaculate, with no tools or small items for Ernst to take. Additionally, the parole officer's husband's personal truck was in the garage, which could have caused Ernst to believe someone was home and to flee when he saw it. Further, the State was not required to refute every possible inference from the evidence. *See State v. Bentley*, 757 N.W.2d 257, 262–63 (Iowa 2008) (holding the State does not have the "onerous burden" of disproving hypotheses favorable to the defendant).

Ernst contends his conviction is not supported by substantial evidence because the State's case relied on circumstantial evidence and that circumstantial evidence must be "wholly inconsistent with any rational hypothesis of his innocence," citing *State v. Schurman*, 205 N.W.2d 732, 734 (Iowa 1973), *overruled by State v. O'Connell*, 275 N.W.2d 197 (Iowa 1979) (en banc), and *State v. Truesdell*, 679 N.W.2d 611, 618–19 (Iowa 2004). He also argues the jury's verdict relied on an improper stacking of inferences from circumstantial evidence, first that Ernst was the one who pried open the garage service door and then that Ernst did so with the specific intent to commit theft. *See State v. Reed*, 875 N.W.2d 693, 711 (Iowa 2016) (Hecht, J., concurring specially) ("[O]ur cautious approach to the doctrine of constructive possession should not recognize a stack of speculative inferences piled one on top of another as substantial evidence that Reed constructively possessed the drugs beyond a reasonable doubt."). Ernst misconstrues our jurisprudence concerning circumstantial evidence.

We readily reject Ernst's reliance on *Schurman*. We eliminated the distinction between direct and circumstantial evidence over forty years ago in *State v. O'Connell*, 275 N.W.2d at 204–05, decided after *Schurman*. Previously, a conviction supported solely by circumstantial evidence could stand only if the facts proved were not only "consistent with the guilt of the accused, but they must [have] also be[en] inconsistent with any rational theory of his innocence." *O'Connell*, 275 N.W.2d at 204 (quoting Iowa State Bar Ass'n, Uniform Instruction 501.13). Recognizing this requirement was based on an "outmoded generality," we joined the growing number of federal and state courts that treat direct and circumstantial evidence as equally probative. *Id.* at 204–05 (collecting cases, including *Holland v. United States*, 348 U.S. 121, 140, 75 S. Ct. 127, 138 (1954) ("If

the jury is convinced beyond a reasonable doubt, we can require no more.")). Indeed, that "[d]irect and circumstantial evidence are equally probative" is now one of the propositions our appellate rules "deem[] so well established that authorities need not be cited" to support it. Iowa R. App. P. 6.904(3)(*p*). Thus, contrary to Ernst's arguments, the State need not discredit every other potential theory to be drawn from circumstantial evidence. *See Bentley*, 757 N.W.2d at 263 ("While the absence of direct evidence that Bentley abducted J.G. from her house means the prosecution cannot affirmatively disprove the hypothesis that someone other than Bentley removed J.G. to the trailer, the State is not tasked with such an onerous burden.").

The same is true when a jury makes inferences from the evidence presented at trial. Proof of specific intent is "seldom susceptible to proof by direct evidence." *State v. Finnel*, 515 N.W.2d 41, 42 (Iowa 1994) (quoting *State v. Olson*, 373 N.W.2d 135, 136 (Iowa 1985)). Rather, proof of intent usually depends on "circumstantial evidence and inferences drawn from such evidence." *Id.* "The requirement of proof beyond a reasonable doubt is satisfied if it is more likely than not that the inference of intent is true." *Id.*

> While other conflicting scenarios can be postulated, a court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."

*Bentley*, 757 N.W.2d at 263 (quoting *Jackson v. Virginia*, 443 U.S. 307, 326, 99 S. Ct. 2781, 2793 (1979)).

We also reject Ernst's reliance on *Truesdell* to argue that evidence susceptible to more than one inference is merely speculative and cannot support a conviction. Truesdell was convicted of possession of a precursor

with intent to manufacture a controlled substance, methamphetamine, after he purchased seventy boxes of cold relief medication containing pseudoephedrine. *See Truesdell*, 679 N.W.2d at 614. We held the evidence was insufficient to support an inference that the defendant possessed the cold medication with the requisite intent to manufacture methamphetamine—as opposed to merely providing pseudoephedrine to allow someone else to manufacture methamphetamine. *Id.* at 618–19. In reversing Truesdell's conviction for lack of sufficient evidence to support the intent-to-manufacture element, we stated that "when two reasonable inferences can be drawn from a piece of evidence, we believe such evidence only gives rise to a suspicion, and, without additional evidence, is insufficient to support guilt." *Id.* Ernst argues this means the State must disprove all other reasonable inferences before inferences from circumstantial evidence may be used to prove an element of an offense.

Ernst reads too much into this isolated sentence. In *Truesdell*, the State offered a single piece of evidence—possession of a large amount of pseudoephedrine—from which a jury could reasonably infer either that the defendant intended to manufacture methamphetamine or that he intended only to supply the precursor for another to use in manufacturing methamphetamine. In *State v. Keeton*, we distinguished *Truesdell* as "a case where proof of intent depends upon a single piece of evidence from which two reasonable inferences could be drawn." 710 N.W.2d 531, 535 (Iowa 2006) (explaining *Keeton* was "not [such] a case"). In *Keeton*, the defendant's conviction for robbery with intent to commit assault was supported by the collective evidence, including surveillance video showing the defendant's actions when a store clerk attempted to block the door and the clerk's testimony that she felt there was "no way" she could stop him from leaving. *Id.* at 534–35. While the evidence was also consistent with

defendant's testimony he never intended to assault the clerk and was merely trying to flee the store following the robbery,

> [t]he success of [the defendant]'s claim at trial hinged on the facts as viewed by the fact-finder, and it is not for us to interfere with the finding made when supported by substantial evidence, even though the evidence may have also supported a finding favorable to the defendant.

*Id.* at 535.

Likewise, this is not a case where inferences to establish each of the contested elements of Ernst's conviction are dependent "upon a single piece of evidence from which two reasonable inferences could be drawn." *Id. Truesdell* does not change our analysis.

Finally, we reject Ernst's argument that his conviction was premised on an improper stacking of inferences. The rule "that a conviction cannot be sustained if obtained by 'piling inference on inference[,]' . . . is oft cited, [but] it begs ready definition." *United States v. Summers*, 414 F.3d 1287, 1294 (10th Cir. 2005) (footnote omitted) (citation omitted) (quoting *United States v. Dunmire*, 403 F.3d 722, 724 (10th Cir. 2005)). An example of inference stacking was recently addressed by the Colorado Supreme Court in *People v. Donald*, where the defendant was charged with violating bail bond conditions that precluded him from leaving the state without permission. 461 P.3d 4, 5–6 (Colo. 2020) (en banc). To prove the defendant had actual knowledge of the bond conditions, the state presented evidence about the "jail's regular practice of having prisoners sign bond paperwork before they are released," which supported the inference that the defendant in that case had in fact signed the bond paperwork. *Id.* at 6. However, the state offered no additional evidence that the defendant read the bail conditions, even if he did sign the paperwork. *Id.* Rather,

> to find that Donald had actual knowledge of the conditions, the jury would have had to make inferences (e.g., that Donald was afforded the opportunity to read the bond paperwork and did so either when he signed it or thereafter) that rested on another inference (i.e., that Donald had signed the bond paperwork consistent with the jail's routine practice).

*Id.* at 7.

The Colorado Supreme Court concluded a strict prohibition against inference stacking was inconsistent with its previous adoption of the substantial evidence test, which treated circumstantial evidence as equally probative as direct evidence. *Id.* at 8–9. The court explained "the inference-upon-inference prohibition was premised on now-outdated law requiring the prosecution to exclude every reasonable hypothesis other than guilt in cases premised solely on circumstantial evidence." *Id.* at 9. Instead, the court adopted the reasoning of those courts that

> have concluded that although inference stacking is not absolutely prohibited, the reliance on stacked inferences is pertinent to the analysis of a sufficiency of the evidence claim because a chain of inferences can become so attenuated that reliance on it to sustain a conviction would be unreasonable and would amount to speculation.

*Id.* (collecting cases).

Juries must necessarily make inferences when finding facts based on circumstantial evidence. *Cf. Southworth v. Commonwealth*, 435 S.W.3d 32, 46 (Ky. 2014) ("[T]he modern trend is to abandon rules limiting the use of circumstantial evidence, including an inference upon an inference.") (emphasis omitted) (quoting Eyal Zamir et al., *Seeing is Believing: The Anti-Inference Bias*, 89 Ind. L.J. 195, 199 (2014)). We agree with the Colorado Supreme Court that a strict prohibition against stacking inferences to be drawn from circumstantial evidence is inconsistent with our current formulation of substantial evidence. *See Donald*, 461 P.3d at 9; *see also United States v. Shahane*, 517 F.2d 1173, 1178 (8th Cir. 1975) ("It is too

much to say, however, that an inference is necessarily invalid or impermissible because it is based on a fact established in whole or in part by a preceding inference."). The relevant inquiry is not whether a fact finding is based on an inference drawn from another inference. Rather, the relevant inquiry is whether a fact finding is a legitimate inference "that may fairly and reasonably be deduced from the record evidence." *Tipton*, 897 N.W.2d at 692 (quoting *Williams*, 695 N.W.2d at 27). Allowing a jury to rely on stacked inferences becomes problematic only when a jury's ultimate fact finding is based on speculation rather than on evidence in the record. *See Summers*, 414 F.3d at 1295 ("[T]he chance of error or speculation increases in proportion to the width of the gap between underlying fact and ultimate conclusion where the gap is bridged by a succession of inferences, each based upon the preceding one." (quoting *Shahane*, 517 F.2d at 1178)); *see also Walls v. Jacob N. Printing Co.*, 618 N.W.2d 282, 286 (Iowa 2000) (en banc) ("[I]nferences can assist in establishing a basic fact, but they cannot in and of themselves create evidence." (quoting *In re Est. of Kerndt*, 251 Iowa 963, 968, 103 N.W.2d 733, 736 (1960))).

Thus, like the Colorado Supreme Court, we do not categorically prohibit stacking of inferences but consider whether the inferences are supported by such evidence as to "convince a rational fact finder the defendant is guilty beyond a reasonable doubt." *Kelso-Christy*, 911 N.W.2d at 666 (quoting *Meyers*, 799 N.W.2d at 138).

Considering all of the evidence in the light most favorable to the jury's verdict, including reasonable inferences to be drawn from it, we conclude Ernst's conviction for attempted burglary with intent to commit theft is support by substantial evidence.

**B. Weight of the Evidence.** Alternatively, Ernst argues the district court should have granted a new trial because the jury verdict is against the weight of the evidence. "We generally review rulings on motions for new trial asserting a verdict is contrary to the weight of the evidence for an abuse of discretion." *State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016).

The State claims this argument is inconsistent with Ernst's sufficiency of the evidence claim. "In contrast to a motion for new trial brought under the sufficiency-of-the-evidence standard, a motion for new trial brought under the weight-of-the-evidence standard essentially concedes the evidence adequately supports the jury verdict." *Id.* A new trial is appropriate under a weight-of-the-evidence challenge "only in the extraordinary case in which the evidence preponderates heavily against the verdict rendered." *Id.*

While the weight-of-the-evidence standard allows the district court to make its own credibility determinations, a district court may grant a motion for new trial based on the weight of the evidence "only if more evidence supports the alternative verdict as opposed to the verdict rendered." *Id.* "The question for the court is . . . whether 'a greater amount of credible evidence' suggests the verdict rendered was a miscarriage of justice." *Id.* (quoting *State v. Ellis*, 578 N.W.2d 655, 658 (Iowa 1998)).

We agree with the State that Ernst merely repackaged his sufficiency-of-the-evidence challenge into a weight-of-the-evidence challenge. Similar to his argument to the district court, Ernst fails to identify any specific evidence that preponderates so heavily in favor of acquittal that we can say the district court abused its discretion in denying his motion for a new trial. Ernst offered the testimony of his sister and his mother as alibi witnesses to refute the State's evidence showing he was in the area of the attempted burglary. But that uncorroborated testimony

was not so credible to require the district court to overturn the jury's verdict. Ernst's sister's trial testimony that Ernst visited her the morning of the attempted burglary was contradicted by her failure to tell the investigator Ernst was at her house that day when she was previously interviewed. Ernst's mother's testimony was contrary to the timing of traffic photos showing Ernst returning to Dubuque alone around 12:20 p.m. Both witnesses' testimony was contrary to the surveillance video showing Ernst's vehicle—and a person wearing clothing similar to what Ernst wore later in the day—drive toward the location of the attempted burglary at the time the alibi witnesses claimed Ernst was with them.

On this record, we cannot say the district court abused its discretion in denying Ernst's motion for a new trial on the basis his conviction is against the weight of the evidence.

**C. Ineffective Assistance of Counsel.** Finally, Ernst objects to the State's introduction of evidence related to his cell phone records. The State elicited testimony from Investigator Grant about his use of cell tower records to create a map indicating the cell towers Ernst's phone pinged when he received calls from his mother and whether the records and map indicated Ernst was near the attempted burglary site outside Cascade, his sister's residence in Bernard, or his mother's residence in Epworth. The State also introduced phone records identifying the two calls Ernst's mother made to him at 11:44 a.m. and 11:48 a.m., during the time she testified he was with her.

Since Ernst did not object to Investigator Grant's testimony about cell tower data, the map he created from that data, or the cell phone records admitted at trial, he raises his claims through the ineffective assistance of counsel framework. He argues his trial counsel was

ineffective for: (1) failing to object to the admission of testimony and the accompanying map relying on historical cell site data from a witness not qualified as an expert and (2) failing to object to the admission of cell phone records as hearsay not fitting an exception.

We recently considered a similar challenge to an officer's testimony about the defendant's general location based on a map created from cell tower records, concluding that "the line between lay and expert testimony involving historical cell site data [depends] on the underlying information supporting the testimony." *State v. Boothby*, 951 N.W.2d 859, 876, (Iowa 2020) (adopting the approach of the growing majority of jurisdictions). Here, the State does not argue the testimony did not require an expert witness, instead arguing only that Investigator Grant could likely meet the expert requirements on a more fully developed record. Given the state of the current record and the fact that the parties did not have the benefit of our *Boothby* opinion, we conclude that Ernst's ineffective assistance claims are better left for postconviction-relief proceedings. *See State v. Harrison*, 914 N.W.2d 178, 208–09 (Iowa 2018) (preserving claims for postconviction-relief proceedings "so an adequate record of the claim can be developed and the attorney charged with providing ineffective assistance may have an opportunity to respond to defendant's claims" (quoting *State v. Soboroff*, 798 N.W.2d 1, 8 (Iowa 2011))).

### III. Conclusion.

Ernst's conviction for attempted burglary is affirmed.

**DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF CONVICTION AFFIRMED.**

All justices concur except Appel, J., who concurs specially.

**APPEL, Justice (concurring specially).**

The court diligently examines the evidence in a light most favorable to the jury's verdict. I write separately to emphasize that the approach of the court applies with equal force in civil contexts such as tort or employment cases. For example, the notion that specific intent is rarely shown by direct evidence is equally true in both criminal and civil settings.

The same may be said about the court's approach to "stacking of inferences." At some point, of course, inferences become so remote or attenuated that they simply cannot be sustained. But it is not mere stacking but the overall remoteness or attenuation that matters. In other words, what might be characterized as the stacking of reasonable inferences does not necessarily prevent a jury from reaching a verdict based upon them.

Although I regard this case as a close one, I agree that, as explained by the majority, the inferences cumulatively provide sufficient evidence to permit the jury to return the verdict it did in this case.